**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Amir Crawford, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | **Civil Action No. _____** |
| Plaintiffs, | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Mercedes-Benz USA, LLC and Mercedes-Benz Group AG f/k/a Daimler AG, | ) ) | |
| Defendants. | | |

Plaintiff Amir Crawford ("Plaintiff"), on behalf of himself and all others similarly situated, files this Class Action Complaint ("CAC") against Defendants Mercedes-Benz USA, LLC and Mercedes-Benz Group AG f/k/a Daimler AG ("Defendants"), and in support state the following:

## **NATURE OF THE ACTION**

1.      This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased one of Defendants' Mercedes vehicles which has a defective battery, which drains rapidly and unexpectedly ("the Battery Defect"). Many types of Mercedes vehicles contain a common electrical system, and as a result, this defect is present in Mercedes vehicles manufactured between 2004 and 2022, and includes but is not limited to Mercedes Class S, C, A, CLA, CLS, G, GLA, GLK, GLC, ML, GLE, GL, GLS, and E.

2.      This defect causes the battery in Mercedes vehicles to suddenly drain, preventing the car from starting, potentially stranding the occupants and endangering their safety. The Battery Defect can also cause vehicle performance to suffer, including the performance of electrical safety systems. In other words, the Battery Defect renders the Affected Vehicles unsafe, unreliable and undesirable.

3.      Defendants knew or should have known about the existence of the Battery Defect and its consequences, and Defendants' own technical service bulletins referred to the Defect as a "known issue."

4.      Defendants knew or should have known of the Battery Defect before Plaintiffs purchased their Affected Vehicles. While Plaintiffs cannot know the extent of Defendants' internal design and testing process absent discovery, it is evident from what is now publicly available, as well as the quality controls and monitoring that manufacturers like Mercedes undertake, that Mercedes was or should have been aware of the Defect. For instance, owners of the Affected Vehicles registered complaints consistent with the Battery Defect to the National Highway Traffic Safety Administration ("NHTSA").

5.      Owners of the Affected Vehicles also made complaints consistent with the Defect in public posts on online *fora*.  As much as such complaints were mounting, Defendants would be receiving its own complaints from customers, and seen trends relating to and information about the Battery Defect from its dealerships. It is likewise apparent that Defendants aware of the Defect because technical service bulletins, issued by Mercedes-authorized mechanics in response to problems they encounter, detail various encounters with the Defect.

6.      Plaintiffs also anticipate that discovery will reveal that Defendants became aware of the Battery Defect through information it learned during the process of designing, manufacturing, and testing the Affected Vehicles which would have exposed the existence of the defect.

7.      Nevertheless, Defendants have never offered to repair the Battery Defect or otherwise compensate Class Members for their injuries resulting from the defect which it has not repaired. Defendants also continue to market its vehicles as safe and reliable and has never disclosed and has instead actively concealed the presence of the Battery Defect.

8.      As a result of Defendants' misconduct, Plaintiffs and other Class Members were harmed and suffered actual damages in the form of overpayment for their vehicles, diminished value, and expenses related to the undisclosed Battery Defect, which Defendants have failed to rectify.

9.      Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendants.

11.      This Court has jurisdiction over Defendants because Defendants are authorized to conduct and does business in New Jersey. Defendants have marketed, promoted, distributed, and sold their vehicles in New Jersey and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

12.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendants transact substantial business in this District.

## THE PARTIES

13.     Plaintiff Amir Crawford is a resident of Plainfield, New Jersey. In about 2019, Mr. Crawford bought a 2019 Mercedes Benz CLS 450 Coupe from Ray Catena Mercedes-Benz in Union, New Jersey.

14.     Since Mr. Crawford purchased his Affected Vehicle, the battery has frequently unexpectedly drained, requiring him to replace the battery twice before the end of the expected life of the batteries since purchasing the car, including two batteries in 2022.

15.     Mr. Crawford has incurred expenses associated with the repairs to his Affected Vehicle.

16.     Defendants never disclosed the Defect to Mr. Crawford before he purchased the Affected Vehicle, so he purchased it on the reasonable, but mistaken, belief that the electrical system was reliable. He reasonably expected that the Affected Vehicle was without defect, and would not have bought it at the price he paid had he been aware of the Defect.

17.     Defendant Mercedes-Benz USA, LLC ("MBUSA") is a Delaware corporation headquartered in Atlanta, Georgia. Its registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

18.     Until approximately July 2015, MBUSA's principal place of business was in Montvale, New Jersey. Until moving its headquarters to Georgia in 2015, MBUSA directed and engaged in the business of designing, manufacturing, marketing, warranting, distributing, selling, leasing, and servicing vehicles, including the Affected Vehicles, from its headquarters in Montvale, New Jersey. Further, MBUSA engages in the following activity in New Jersey:

      a.  Directing, planning and execution of decisions relating to the advertising, sales, and marketing of the Affected Vehicles, including decisions to misrepresent or conceal the Battery Defect;

b.  Training dealership and corporate personnel regarding the sale and marketing of the Affected Vehicles, including how to misrepresent or conceal the Battery Defect;

c.  Supplying parts and housing inventory for dealers for the entire Northeast region;

d.  Housing and distributing inventory containing the Battery Defect from its NJ Regional Master Parts Distribution Center;

e.  Distributing inventory containing the Defect to independent dealerships in New Jersey.

19.  MBUSA is a wholly owned subsidiary of MBG.

20.  At all relevant times, MBUSA has been an agent of MBG and subject to its control.

21.  Defendant Mercedes-Benz Group AG f/k/a Daimler ("MBG," and, collectively with MBUSA, "Mercedes" or "Defendants") is a German Corporation with its principal place of business in Stuttgart, Germany.

22.  At all relevant times, MBG engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Affected Vehicles, in the United States.

23.  MBG engineered, designed, developed, manufactured, and installed the electrical systems in the Affected Vehicles, with knowledge of the Battery Defect, and exported those vehicles to the United States with the knowledge and understanding that they would be sold throughout the United States.

24.  MBG conducted business through a chain of distribution throughout the United States, including in the District of New Jersey and the State of New Jersey, by selling, advertising, promoting, and distributing vehicles under the Mercedes mark.

25.     MBG markets its products in a continuous manner in the United States, including in the State of New Jersey.

26.     As the parent of MBUSA, MBG controls and communicates with, MBUSA, including in all aspects of the Affected Vehicles distributed in the United States. MBUSA also acts as the sole distributor for Mercedes vehicles in the United States, purchasing those vehicles from MBG in Germany for sale in this country.

27.     Upon information and belief, the relationship between MBG and MBUSA is governed by a General Distributor Agreement that gives MBG the right to control nearly every aspect of MBUSA's operations, including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

28.     MBG owns 100% of the capital share in MBUSA and paid 19 million euros (then worth approximately 21.8 million U.S. dollars) in relocation expenses when it moved MBUSA's headquarters from New Jersey to Atlanta.

29.     MBG and MBUSA hold themselves out collectively as "Mercedes." In consumer-facing material in the United States, MBG does not draw a distinction between itself and MBUSA, instead representing MBUSA as MBG's United States presence as "Mercedes," for the purpose of selling and leasing vehicles bearing the Mercedes-Benz mark.

30.     Plaintiffs and other Class Members justifiably relied on MBUSA's representations, actions, and omissions regarding the Affected Vehicles that were the responsibility of MBG, and suffered injuries as a result of their reliance on those representations.

31.     Service of process on this defendant is proper by serving it via its wholly owned subsidiary and alter ego, MBUSA.

**FACTUAL BACKGROUND**

32.     In short, the Battery Defect in Mercedes vehicles causes the 12-volt battery in Mercedes vehicles to drain suddenly and unexpectedly while the car is parked. If the battery is drained, the starter will not have enough power to operate, making the vehicle impossible to start using the ignition and denying the vehicle sufficient energy to operate any of the electrical components.

33.     Recent Mercedes models contain 48-volt batteries that help to power the vehicle alongside the traditional internal combustion engine. The intent of this hybrid design is to increase fuel efficiency. Because the vehicle relies on the battery for power, however, if the battery fails mid-operation, the vehicle's performance suffers and its engine can overheat.

34.     Affected Vehicles that contain a 48-volt battery are susceptible to a sudden drain of either or both of their 12 or 48-volt battery, causing the car to either fail to start or its performance to suffer mid-operation.

35.     NHTSA's Office of Defect Investigation allows consumers to submit complaints about vehicles directly to the agency, which it maintains in central databases, and Defendants = regularly monitor these complaints.

36.     Throughout the Class Period, consumers registered complaints with NHTSA that are consistent with the Battery Defect.

37.     Through its monitoring of complaints to NHTSA, Defendants were or should have become aware of the Defect.

38.     The scope and impact of the Battery Defect are evident based on the volume of complaints to NHTSA regarding the Affected Vehicles. By way of example, below is a list of consumer complaints registered with NHTSA.

i.   NHTSA ID Number: 11282140

Incident Date: November 23, 2019
Consumer Location: Parker, CO
Vehicle Identification Number : WDDWF4KB2HR****

Summary of complaint: The 2017 Mercedes-Benz c300 vehicle suffered a complete loss of power/electrics while in motion at speed and in traffic, causing the vehicle to unexpectedly stop on two separate occasions. the loss of all electrical supply leaves the vehicle immobile, without warning indicators and cannot be moved. The first incident was around 5pm in a busy road junction in the dark, with limited lighting. as the vehicle is black colored it is difficult to see in these circumstances. The second incident was at another busy road junction in heavy traffic, at midday on a saturday. On both occasions the police had to attend as the immobilized vehicle posed a serious hazard with a risk of causing a collision to other road users. The approximate times to get the vehicle removed from the road in these two incidents were between 45 - 60 minutes. The period between the two incidents was 11 days. The day following then first incident, the vehicle was inspected by a Mercedes dealership, who had the vehicle in their possession for five days. Initially they stated that they had not found a cause for the loss of all electrical power in the vehicle. Subsequently when pressed on the matter, they stated the cause was a connection problem to the positive terminal on the battery. In good faith the vehicle was collected by me and driven without any apparent problem for four days, prior to the second incident. The mileage driven in that period was less than 100 miles in total. This vehicle poses a serious risk to the driver, passengers and other road users.

ii.  NHTSA ID Number: 11287936

Incident Date: November 25, 2019
Consumer Location: Biglerville, PA
Vehicle Identification Number: WDDGF8BB1AR ****

Summary of Complaint: My C300 is having a EIS (electrical ignition system failure). Where the key in the ignition won't start the vehicle. It will leave you stranded and won't allow you to put the car in neutral because of the amir theft lock out box. Many people are having this issue. Simple research can show you that.

iii.  NHTSA ID Number: 11352040

Incident Date: August 29, 2020
Consumer Location: Cary, NC
Vehicle Identification Number: 4JGFB5KB0LA ****

Summary of Complaint: Driving down the highway at 70 mph and '48v battery malfunction' warning goes off, along with a yellow check engine light. A few seconds later a 'coolant' error message pops up and a red check engine light comes on. Car looses power completely and I'm unable to accelerate at all. Call flashes a message of 'pull over and turn the engine off'. Fortunately no one was behind me and I was able to coast safely to the side of the highway before the car stalled completely. Found out through several blog posts multiple other 2020 GLE owners are having the same safety issue and there has been no recall by Mercedes-Benz and no resolution for the issue. Vehicles are spending months in the shop and eventually being bought back by the manufacturer or dealership. This is an incredibly dangerous issue to lose all power and control of the vehicles speed. I'm lucky no one was on the road near me when this happened, otherwise an accident almost surely would have occurred. Mercedes should be forced to address this safety issue immediately.

iv.   NHTSA ID Number: 11470964

Incident Date: May 1, 2021
Consumer Location: Santa Monica, CA
Vehicle Identification Number : WDD3G4FB1KW ****

Summary of Complaint: My A220 has numerous problems starting the airbag failure light comes on very often which I took in for a repair - Mercedes of downtown stated they fixed but it still has the airbag failure light appearing every now and again. The second issue that keeps happening is what I believe is a transmission failure, the first time I bought the car I noticed it kept jolting when accelerating and or going up a hill. I was quite scared because I had a ford focus that did the same thing and would die on me all the time. This A220 has the same exact jolting as my ford focus did but does not die. I kept bringing my car into Mercedes and explaining my concern, they didn't find any issues until recently when Mercedes stated it was the "battery" after they "supposedly fixed the issue, I noticed a month went by and the car continues to have the same jolting. I am extremely terrified of driving this car at this point and need assistance in having Mercedes look into this deeper.

v.   NHTSA ID Number: 11441783

Incident Date: November 20, 2021
Consumer Location: Livingston, NJ
Vehicle Identification Number: 4JGfb6bb0ma****

Summary of Complaint: GLE53 would not start. The car threw an error stating 12v battery malfunction.(Impacted the 48V battery) This essentially disables the vehicle completely. This is 2021 GLE53 with less than 5000 miles. There is also an issue with the side-view mirror and wind noise.

39.     In the course of exercising its duty to monitor these reports to NHTSA, Defendants were or should have become aware of the Battery Defect.

40.     In addition to formal reports submitted to itself and to NHTSA, Defendants were or should have been aware that many Affected Vehicle owners posted complaints about the Battery on online fora, such as Benzforum.com and Benzworld.org, which are accessible to Defendants. It is common practice for manufacturers to monitor such postings as part of regular quality control measures.

41.     Further, as a part of the standard process of design and manufacture of its vehicles, Defendants would have—or reasonably should have—gained extensive and exclusive knowledge of the Affected Vehicles, including the existence of the Battery Defect.

42.     A manufacturer adhering to industry standards for design and testing would have implemented a sufficient design and testing process so that it would have detected the Battery Defect.

43.     Upon learning of the Defect, a manufacturer adhering to industry standards for design and testing would have taken steps to repair or mitigate the Battery Defect.

44.     Defendants also knew or should have known about the Battery Defect due to the high volume of complaints made by customers during the Affected Vehicles' warranty periods.

45.     Similarly, Defendants knew or should have known about the Battery Defect through its replacement part data.

46.     The abnormally high number of electrical system replacements and repairs would or should have notified Defendants of a defect in the electrical systems.

47.     Defendants also collect, review, and analyze data regarding all vehicle repairs made under warranty at is dealerships and service centers.

48.     This data is proprietary and Defendants retain exclusive control of the data. As a result, Plaintiffs are unable to view the data before discovery. Plaintiffs reasonably believe that this data, when obtained through discovery, will show that Defendants were or should have been aware of the Battery Defect.

49.     Due to these various internal reports, Defects was or should have been aware of the Battery Defect by 2003, at the latest.

50.     Moreover, all car manufacturers regularly issue Technical Service Bulletins ("TSB"s) in response to reports or discovery of problems in their vehicles. The TSBs are some of the most proactive countermeasures to a problem and are intended to help repair centers with common problems and to standardize repairs by describing problems with vehicles and prescribing specific repairs.

51.     NHTSA maintains a public database of all TSBs issued by major automobile manufacturers, including Mercedes.

52.     The high volume of TSBs addressing problems of prematurely drained batteries across various Mercedes models reflects the scope of the problem Mercedes faced, and its knowledge of the Battery Defect. Indeed, these arise from a high volume of reported problems from dealers, repair centers, and consumers.

53.     For example, the July 12, 2013 TSB LI82.95-P-056655, entitled "Battery drain bus keepawake detected - mbrace control unit causes bus keepawake," describes how a "Customer

experiences low battery conditions, resulting in jump starts, and eventually requiring battery replacement." It advises that the "PASS (mbrace) is programmed to update its Preferred Roaming List (PRL) every 90 days," and in some cases "will start attempting to update, even though no network is detected," which will ultimately "keep the CAN Bus awake, and . . . drain the battery."

54.     The October 27, 2017 TSB LI54.10-P-066344, entitled "Vehicle Does Not Start, Battery Discharged," advises that the onboard electrical system can continue operate when the engine is off, draining the battery, in which case the engine light will display the message "Interior CAN awake unusually long."

55.     The March 13, 2017 TSB LI82.85-P-066086, entitled "Discharge Starter Battery Because Of Excessively High Quiescent Current," describes how "the HERMES communication module (N112/9) may keep the CAN awake through the Bluetooth connection to the head unit," which "can discharge the starter battery" and result in the "[e]ngine start not [being] possible because battery voltage too low."

56.     The May 10, 2018 TSB LI54.10-P-066942, entitled "Discharged battery; vehicle does not start!! Model series 177 only!!" requests to "create a PTSS case for all 177 vehicles found with a discharged battery and no start condition," and lists the cause of the failure as "under analysis."

57.     The August 10, 2020 TSB LI54.10-P-071596, entitled "Vehicle does not start / Vehicle cannot be unlocked - starter battery may be discharged," describes how a vehicle cannot start or be unlocked, while displaying the message "Battery - Start Engine - see Operator's Manual." It describes an analysis showing event code U116000, detecting "a bus keepawake control unit . . . in the electronic ignition switch control unit."

58.     The March 16, 2021 TSB LI54.10-P-064762, entitled "Battery Discharged, Vehicle Does Not Start - Event Code U116000 A Bus Keepawake Event Has Been Detected Is Logged In The Quick Test," describes how the "[b]attery discharged, vehicle does not start," while displaying "event code U116000 'A bus keepawake event has been detected." The TSB advises that this may be caused by the electronic ignition lock control unit crashing, the Keyless-Go control unit crashing, the or the electronic ignition lock unit causing a "bus keepawake event."

59.     The April 21, 2021 TSB LI54.10-P-069698, entitled "Functional impairment of 48 V on-board electrical system," describes various associated problems, including "No start; Yellow or red instrument cluster message for 48 V on-board electrical system battery (G1/3); Limp home mode, overheating, A/C not blowing cold, or loss of acceleration." It advises only that "[v]arious causes are possible."

60.     As is a matter of course, TSBs are not the only countermeasure to be taken by manufactures, like Mercedes, to address a defect like the Battery Defect. Often, countermeasures are considered and taken outside of TSBs. Given the foregoing complaints to NHTSA, the TSBs implemented by Mercedes, and the following facts, Plaintiffs understand that Mercedes also took such countermeasures, but never succeeded in remediating the Battery Defect.

A.      **Defendants Sold the Affected Vehicles with a Limited Warranty**

61.     Mercedes sold the Affected Vehicles with a "New Vehicle Limited Warranty," which includes protections against any "defects in material or workmanship":

> Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Dealership will make any repairs or replacements necessary, to correct defects in material or workmanship, but not design, arising during the warranty period . . . . This warranty is for 48 months or 50,000 miles, whichever occurs first . . . . Warranty repairs will be made at no charge for parts and labor.

62.     The New Vehicle Limited Warranty also specifically extends coverage to the 48-volt battery:

> BATTERY COVERAGE: Mercedes-Benz USA, LLC ("MBUSA") warrants the high voltage battery in your vehicle to the original and each subsequent owner for any repairs or replacements necessary to correct defects in material or workmanship, but not design, relating to the battery which may arise after the expiration of the Vehicle's Warranty.

63.     Plaintiffs and other Class Members could not assent to any disclaimers or limitations on this new vehicle warranty because they only received the terms of the warranty after the delivery of their vehicles.

64.     When the Battery Defect manifested in their Vehicles, Mercedes refused to acknowledge any flaw in the electrical system, and forced Plaintiffs and Class Members to pay for repairs on their own.

65.     Defendants knew with certainty as the time of manufacture and sale that the Battery Defect was present in the Affected Vehicles, as it is common and uniform to every vehicle in the Class.

66.     Defendants concealed from Plaintiffs, at the time of manufacture and sale, that the Affected Vehicles contained the Battery Defect. Defendants failed to inform Plaintiffs and the public of their wrongdoing, which permitted the Affected Vehicles to be re-sold at inflated prices. Mercedes' post-sale-and-delivery disclaimers and limitations on its vehicle warranties are ineffectual because such terms go to the essence of Plaintiffs' and Class Members' vehicle sale or lease contracts

67.     By refusing to repair the Battery Defect, or to reimburse Plaintiffs and other Class Members for related expenses, Defendants have failed to honor its express warranty.

**B.     <u>Defendants Fraudulently Concealed and Misrepresented the Battery Defect.</u>**

68.     Despite its knowledge of the Defect, Mercedes knowingly manufactured, marketed, and sold the Affected Vehicles while willfully concealing the Battery Defect from Class Members and Plaintiffs.

69.     In nationwide mass media advertising campaigns, Defendants held out the Affected Vehicles as having superior engineering and performance, despite its knowledge that the Battery Defect represented a flaw that rendered the Affected Vehicles short of industry standards for engineering, and substantially impaired the Affected Vehicles' performance.

70.     For instance, Defendants held out its vehicles as "technologically advanced," using "state of the art" "fine craftsmanship," which "live up to exacting requirements and relentless excellence" to deliver "unparalleled performance."

71.     In its marketing materials, Defendants described its vehicles as ones that "overachieve, outperform, and overdeliver", and possess "extraordinary durability and longevity."

72.     Defendants made these claims despite its knowledge of the Battery Defect.

73.     Defendants likewise failed to notify Class Members, including Plaintiffs, of the Battery Defect prior to their purchases.

74.     Plaintiffs, along with all other Class Members, heard and saw these statements, and based their decisions to buy or lease their Affected Vehicles based on these representations and omissions.

75.     Had Defendants disclosed the existence and extent of the Battery Defect, Plaintiffs would not have purchased their vehicles, or would have purchased them for a lower price.

76.     Defendants also knowingly concealed the Battery Defect from Plaintiffs and other Class Members after their purchases, by telling customers who called its customer service

department with complaints or concerns arising out of the Battery Defect that their vehicles had no problems, and by refusing to pay for related repairs under their warranty.

## STATUTE OF LIMITATIONS TOLLING

**A.      Fraudulent Concealment Tolling**

77.      All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

78.      Instead of disclosing the existence of the Battery Defect, Defendants falsely represented that the Affected Vehicles were safe, dependable, reliable, and of high quality.

**B.      Discovery Rule Tolling**

79.      Class Members had no way of knowing about Defendants' deception with regard to the Battery Defect in the Affected Vehicles.

80.      Within the time period of any applicable statutes of limitation, Plaintiffs and other Class Members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Battery Defect in the Affected Vehicles and misrepresenting the safety, quality, and reliability of the Affected Vehicles.

81.      Plaintiffs and the other Class Members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge to federal and state authorities, dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Defendants had concealed information about the true nature of the Battery Defect in the Affected Vehicles, which was discovered by Plaintiffs only shortly before this action was filed. Nor, in any event, would such an investigation on the part of Plaintiffs and other Class Members have revealed this information, as a result of Defendants' concealment and misrepresentations.

82.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims asserted herein.

**C.     Estoppel**

83.     Defendants were under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of the electrical system in the Affected Vehicles.

84.     Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the electrical system in the Affected Vehicles.

85.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CHOICE OF LAW ALLEGATIONS

86.     Because Plaintiffs bring this Complaint in New Jersey, New Jersey's choice of law regime governs the state law allegations in this Complaint. Under New Jersey's choice of law rules, New Jersey law applies to the claims of all Class Members, regardless of their state of residence or state of purchase, as Plaintiffs do not believe there is no conflict between New Jersey's law and the laws of other states with an interest in the outcome of this litigation.

87.     Because MBUSA sells vehicles in New Jersey, and some of the Plaintiffs bought their Affected Vehicle in New Jersey, the subject matter of this litigation arises under Mercedes' connections to New Jersey.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff bring this action on behalf of himself and all other similarly situated class members (the "Class" or "Classes") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class and/or Sub-Classes against Defendants for violations of Florida state laws and/or similar laws in other states:

### Multi-State Class Action

All persons who purchased or leased a Mercedes Vehicle containing the Battery Defect rendering them subject to any remedial- or counter-measure, including but not limited to the following TSBs:

LI54.15-P-070802, LI42.47-P-069817, LI54.10-P-066344, LI82.85-P-066086, LI82-95-P-056655, LI27.00-P-072627, LI54.10-P-064762, LI54.10-P-066942, LI54.10-P-071596, or LI54.10-P-069698.

89.     In the alternative, Plaintiff brings this action on behalf of himself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Sub-Classes, which includes but is not limited to claims under the consumer protection and unfair and deceptive trade practices statutes of each of the jurisdictions below in each of those jurisdictions:

### Alternative Sub-Class

All persons who purchased or leased, within New Jersey, California, Illinois, Minnesota, Missouri, New York, Ohio, Pennsylvania, or Texas, a Mercedes Vehicle containing the Battery Defect rendering them subject to any remedial- or counter-measure, including but not limited to the following TSBs:

LI54.15-P-070802, LI42.47-P-069817, LI54.10-P-066344, LI82.85-P-066086, LI82-95-P-056655, LI27.00-P-072627, LI54.10-P-064762, LI54.10-P-066942, LI54.10-P-071596, or LI54.10-P-069698

90.     Plaintiff reserves the right to modify these definitions.

91.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class/Sub-Classes contains thousands of purchasers of Defendant's Affected Vehicles who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

92.     Plaintiff's claims are typical to those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied each and every Affected Vehicle. Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class/Sub-Class.

93.     Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)   Whether Defendants engaged in the conduct alleged herein;

(b)   Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Affected Vehicles into the stream of commerce in the United States;

(c)   Whether the Affected Vehicles contain a Battery Defect in their electrical system;

(d)   Whether the Battery Defect is a material fact that a reasonable consumer would consider in purchasing an Affected Vehicle;

(e)  Whether and how long Defendants knew or should have known about the Battery Defect of the Affected Vehicles;

(f)  When Defendants discovered the Battery Defect, and what, if anything, it did in response;

(g)  The nature of uniform representations Defendants made about the Affected Vehicles' reliability;

(h)  Whether Defendants had a duty to disclose relevant information about the Defect;

(i)  Whether Defendants concealed information about the Battery Defect;

(j)  The relevant warranties made by Defendants relating to the Affected Vehicles, the electrical system and the Battery Defect;

(k)  Whether Defendants sought to minimize its warranty expenses by refusing to repair the Battery Defect in the Affected Vehicles;

(l)  Whether Defendants engaged in breach of contract and fraudulent concealment;

(m)  Whether Plaintiffs and other Class Members overpaid for their Affected Vehicles;

(n)  Whether Plaintiffs sustained out of pocket losses from repairs arising out of the Battery Defect, and if so, how much;

(o)  Whether the Affected Vehicles were unfit for the ordinary purposes for which they were sold;

(p)  Whether Plaintiffs and other Class Members are entitled to a declaratory judgment;

(q)   Whether Plaintiffs and other Class Members are entitled to equitable relief, including a preliminary injunction;

(r)   Whether Defendants are obligated to inform Class Members of any potential claims; and

(s)   Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

(t)   Plaintiff and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff have retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor are Plaintiff subject to any unique defenses.

94.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

95.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

96.     Plaintiff seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above and requiring Defendants to provide a Plaintiffs with the actual damages suffered in the form of overpayment for their vehicles, diminished value, and expenses related to the undisclosed Battery Defect.

97.     Unless a Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### FIRST CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
### (On Behalf of the Multi-State Class and All State Classes)

98.     Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

99.     Plaintiffs bring this Count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

100.    Defendants intentionally concealed that the Affected Vehicles contained the Battery Defect.

101.    Defendants affirmatively misrepresented to Plaintiffs and the public in advertising and other forms of communication, including standard and uniform material provided with each Affected Vehicle and on its website, that the Affected Vehicles it was selling had no significant

defects, that the Affected Vehicles were safe, reliable, and of high quality, and would perform and operate in a safe manner.

102.    Defendants actively concealed the Battery Defect from Plaintiffs and other Class Members while simultaneously representing that its vehicles were safe, reliable, and high-quality.

103.    Defendants knew about the defect in the Affected Vehicles when these representations, omissions, and concealments were made.

104.    The Affected Vehicles purchased by Plaintiffs and the other Class Members contained the Battery Defect.

105.    The truth about the defective Affected Vehicles was known only to Defendants; Plaintiffs and the other Class Members did not know of these facts and Defendants actively concealed these facts from Plaintiffs and Class Members.

106.    Plaintiffs and the other Class Members reasonably relied upon Defendants' deception. They had no way of knowing that their vehicles contained the Battery Defect, which Defendants concealed. As consumers, Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiffs and Class Members by concealing the true facts about the Affected Vehicles and the Battery Defect.

107.    Defendants' false representations and omissions were material to consumers because they concerned the performance of the Affected Vehicles, which played a significant role in the value of the Affected Vehicles.

108.    Defendants had a duty to disclose the Battery Defect and violations with respect to the Affected Vehicles because they concerned the performance of the Affected Vehicles, because they relate to the safety of the vehicles and pose a safety hazard, because the details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge

as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members.

109.     Defendants also had a duty to disclose because it made general affirmative representations about the safety and reliability of the Affected Vehicles, without telling consumers that the Affected Vehicles had a fundamental Defect that would affect the safety, quality, and reliability of the Affected Vehicles.

110.     Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Battery Defect as set forth herein. These omitted and concealed facts were material because they directly impact the safety and value of the Affected Vehicles purchased by Plaintiffs and Class Members.

111.     Defendants have still not made full and adequate disclosures and continues to defraud Plaintiffs and Class Members by concealing material information regarding the Battery Defect in the Affected Vehicles.

112.     Plaintiffs and Class Members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for the Affected Vehicles with the Battery Defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and other Class Members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class Members.

113.     Because of the concealment and/or suppression of facts, Plaintiffs and other Class Members sustained damage because they own Affected Vehicles that are diminished in value as a result of Defendants' concealment of the true safety and quality of the Affected Vehicles. Had

Plaintiffs and other Class Members been aware of the Battery Defect, and Mercedes' disregard for the truth, Plaintiffs and other Class Members would have paid less for their Affected Vehicles or would not have purchased them at all.

114.   The value of Plaintiffs' and other Class Members' Affected Vehicles has diminished as a result of Mercedes' fraudulent concealment of the Battery Defect, which has made any reasonable consumer reluctant to purchase an Affected Vehicle, let alone pay what otherwise would have been fair market value for the Affected Vehicle.

115.   Accordingly, Defendants are liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

116.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights, in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<u>**SECOND CAUSE OF ACTION**</u>
**Unjust Enrichment**
**(On Behalf of the Multi-State Class and All State Classes)**

117.   Plaintiff incorporate by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

118.   As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Classes when they purchased the Defendants' Affected Vehicles.

119.   In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Classes.

120.    As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

121.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

122.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive labeling and marketing of Defendants' Affected Vehicles to Plaintiff and members of the Classes.

123.    Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

124.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Classes.

125.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by them.

126.    Finally, Plaintiff and members of the Classes may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

### THIRD CAUSE OF ACTION
### BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING
### (BASED ON COMMON LAW)
### (On Behalf of the Multi-State Class and All State Classes)

127.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

128.    Plaintiffs assert this Count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

129.     Plaintiffs and other Class Members entered into contracts with MBUSA in connection with the sale of the Affected Vehicles.

130.     Plaintiffs and other Class Members gave fair and reasonable consideration and performed all their material obligations under the contracts.

131.     Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

132.     Plaintiffs and other Class Members had a reasonable expectation that, when they purchased their Affected Vehicles from MBUSA, the Affected Vehicles would be free of defects, including the Battery Defect.

133.     MBUSA used its discretion to manufacture and sell vehicles with an inferior electrical system into its vehicles without informing Plaintiffs and Class members that the inferior technology would create a safety defect in the Affected Vehicles.

134.     Plaintiffs and Class members had no reason to know MBUSA had manufactured the Affected Vehicles with an Battery Defect.

135.     By creating and promoting vehicles with the Battery Defect, MBUSA breached the covenant of good faith and fair dealing and breached its contractual duty to Plaintiffs and Class Members.

136.     As a direct and proximate result of MBUSA's breach, Plaintiffs and Class Members suffered damages, including being induced to purchase the defective Affected Vehicles.

### FOURTH CAUSE OF ACTION
**Breach of Express Warranty**
**(On Behalf of the Multi-State Class and All State Classes)**

137.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

138.     Plaintiffs assert this Count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

139.     MBUSA is a merchant with respect to the Affected Vehicles.

140.     MBUSA provided Plaintiffs and other Class Members with written warranties, expressly warranting that it would repair any defects in material free of charge during the warranty period.

141.     MBUSA's written express warranties formed the basis of the bargain reached when Plaintiffs and other Class Members purchased or leased their Affected Vehicles. Plaintiffs and Class Members reasonably relied on MBUSA's express warranties when purchasing or leasing their Affected Vehicles.

142.     MBUSA knew or should have known that its warranty was false and misleading. At the time the Affected Vehicles were sold, MBUSA knew or should have known about the existence of the Battery Defect. Nevertheless, it offered the written warranty with no intention of honoring the warranty with regard to the Battery Defect.

143.     MBUSA breached these warranties, as described in more detail above. Without limitation, the Affected Vehicles contain the Battery Defect, which causes the Affected Vehicles to malfunction or underperform. The Battery Defect is a common defect shared by all Affected Vehicles.

144.     MBUSA has not offered a permanent or adequate repair or replacement of the Electrical System that would cure the Battery Defect. MBUSA has repeatedly refused to pay the costs of repairing or replacing the electrical system, offering instead only temporary fixes.

145.     The mileage and time limits contained in MBUSA's warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things,

Plaintiffs and Class Members had no meaningful choice in determining these mileage and time limitations, the terms of which unreasonably favored MBUSA. A gross disparity in bargaining power existed between MBUSA and the Class Members, and MBUSA knew of the defect at the time of sale.

146.     By refusing to repair the Defect, MBUSA breached its express warranty to repair defects in the Affected Vehicles. MBUSA has not remedied its breach.

147.     Alternatively, affording MBUSA a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of the sale or lease of each Affected Vehicle, MBUSA knew or should have known of its misrepresentations and omissions regarding the Battery Defect, but nonetheless failed to rectify the situation or disclose the Defect. When customers have reported problems associated with the Battery Defect, MBUSA has not covered repairs to the electrical system under its warranty. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure or afford MBUSA a reasonable opportunity to cure its breach of warranty is excused and should therefore be deemed satisfied

148.     As a direct and proximate of MBUSA's breach of its express written warranty, Plaintiffs and other Class Members have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
(By all Plaintiffs against MBUSA only)

149.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

150.     Plaintiffs assert this Count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

151.    A warranty that the Affected Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased an Affected Vehicle from Defendants.

152.    The Affected Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used as a result of the Battery Defect.

153.    MBUSA knew or had reason to know of the specific use for which the Affected Vehicles were purchased.

154.    Because of the Battery Defect, the Affected Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

155.    MBUSA knew about the defect in the Affected Vehicles, allowing MBUSA to cure their breach of warranty if it chose.

156.    Plaintiffs and other Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of MBUSA's conduct described herein. Affording MBUSA a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile. Moreover, MBUSA was provided notice of these issues by numerous complaints filed against it, internal investigations, postings on websites, and other sources.

157.    Accordingly, MBUSA is liable to Plaintiffs and other Class Members for damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.***
**THE MAGNUSON-MOSS WARRANTY ACT**
(by all Plaintiffs against MBUSA only)

158.     Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

159.     Plaintiffs bring this cause of action for themselves and on behalf of the Class. In the alternative, Plaintiffs bring this claim on behalf of each State Subclass under the law of each state in which Class or Subclass members owned and/or leased an Affected Vehicle.

160.     Plaintiffs are each a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

161.     MBUSA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

162.     The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

163.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

164.     MBUSA provided Plaintiffs and other Class Members with a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Affected Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

165.     MBUSA breached these warranties, as described in more detail above. Without limitation, the Affected Vehicles contain the Battery Defect, which causes the Affected Vehicles to malfunction or underperform. The Battery Defect is a common design defect shared by all Affected Vehicles.

166.     At the time the Affected Vehicles were sold, MBUSA knew or should have known about the existence of the Battery Defect and offered the written warranty, with no intention of honoring the warranty with regard to the Battery Defect.

167.     MBUSA has not offered a permanent or adequate repair or replacement of the Electrical System that would cure the Battery Defect. MBUSA has repeatedly refused to pay the costs of repairing or replacing the electrical system, offering instead only temporary fixes. This refusal to adequately repair or replace a defective product violates 15 U.S.C. § 2304(d)(1).

168.     MBUSA extended an implied warranty to Plaintiffs and other Class Members, which covers the Battery Defect.

169.     MBUSA breached its implied warranty by selling Affected Vehicles with the Battery Defect, which rendered the vehicles neither merchantable nor fit for their intended purpose.

170.     Plaintiffs and the other Class Members have had sufficient direct dealings with either MBUSA or its agents (e.g., dealerships and technical support) to establish privity of contract between MBUSA on one hand, and Plaintiffs and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between MBUSA and its dealers, and specifically, of MBUSA's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

171.     MBUSA was afforded a reasonable opportunity to cure its breach but failed to do so.

172.     Alternatively, affording MBUSA a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of the sale or lease of each Affected Vehicle, MBUSA knew or should have known of its misrepresentations and omissions regarding the Battery Defect, but nonetheless failed to rectify the situation or disclose the Defect.

When customers have reported problems associated with the Battery Defect, MBUSA has not covered repairs to the electrical system under its warranty. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure or afford MBUSA a reasonable opportunity to cure its breach of warranty is excused and should therefore be deemed satisfied.

173.    Plaintiffs and the other Class Members would suffer economic hardship if they returned their Affected Vehicles but did not receive the return of all payments made by them. Because MBUSA is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class Members have not re-accepted their Affected Vehicles by retaining them.

174.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

175.    Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of the Affected Vehicles, in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)**
(By all Plaintiffs against Mercedes, or, alternately, by the New Jersey Subclass against Mercedes)

176.    Plaintiff incorporates by reference and re-allege each and every allegation contained above, as though fully set forth herein.

177.    Plaintiffs assert this Count on behalf of themselves and the Nationwide Class, or, alternatively, on behalf of the New Jersey Subclass.

178.    Mercedes, Plaintiffs, and Class Members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

179.    Mercedes engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

180.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, et seq. ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

181.    Mercedes thus violated the N.J. CFA by, at minimum, (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the Affected Vehicles as safe with the intent not to sell them as advertised.

182.    Mercedes intentionally, affirmatively, and knowingly misrepresented material facts, and actively concealed and intentionally omitted material facts regarding the Battery Defect and the Affected Vehicles with intent to mislead Plaintiffs and other Class Members.

183.    Mercedes also engaged in unconscionable and deceptive conduct by selling the Affected Vehicles with the Battery Defect without disclosing it to consumers, including Plaintiffs

and other Class Members, despite knowing that it would cause vehicles to malfunction and performance to suffer.

184.     Mercedes knew or should have known of the Battery Defect prior to the sale or lease of the Affected Vehicles to Plaintiffs and other Class Members.

185.     Mercedes knowingly and intentionally failed to disclose material facts regarding the Battery Defect to Plaintiffs and other Class Members.

186.     Mercedes knew or should have known that its conduct violated the N.J. CFA.

187.     Mercedes owed Plaintiffs and Class members a duty to disclose the truth about the Defect because it, possessed exclusive knowledge about the electrical systems in the Affected Vehicles, including the Defect; intentionally concealed the foregoing from Plaintiffs and Class Members, and made incomplete representations about the Affected Vehicles' safety while purposefully withholding material facts that contradicted those representations.

188.     Mercedes had a duty to disclose that the Affected Vehicles were defective, because, having volunteered to provide information to Plaintiffs and Class members, Mercedes had the duty to disclose not just the partial truth, but the entire truth.

189.     Mercedes also had a duty to disclose that the Affected Vehicles were defective because the Defect creates a safety issue.

190.     Mercedes' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity and were likely to mislead and create a false impression in consumers, and did in fact deceive reasonable consumers, including Plaintiff and Subclass members

191.     Mercedes' conduct proximately caused injuries to Plaintiffs and other Class Members.

192.    Plaintiffs and other Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Mercedes' conduct in that Plaintiffs and the other Class Members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Mercedes' misrepresentations, fraud, deceptive practices, and omissions.

193.    Mercedes' violations present a continuing risk to the safety of Plaintiffs as well as to the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

194.    Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs and the other Class Members actual damages in an amount to be proven at trial, statutory damages, and treble damages, as well as injunctive relief attorneys' fees and costs, and all other relief that this Court deems just and proper.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully request that the Court enter judgment in their favor and against Mercedes, as follows:

A.    Certification of the proposed Nationwide Class and State Subclasses, with Plaintiffs as class representatives;

B.    Appointment of Plaintiffs' counsel as Class Counsel;

C.    A declaratory judgment that the Electrical Systems in the Affected Vehicles have a Defect that results in battery drains and Electrical System Failures, and which requires disclosure.

D.    Injunctive relief, including but not limited to:

a.   Requiring Mercedes to treat problems arising from the Battery Defect under

the warranty;

b. Requiring Mercedes to reassess all prior warranty claims related to the Battery Defect;

c. Requiring Mercedes to pay the cost of inspection to determine whether the Battery Defect is present in the vehicles of Class Members, with any coverage disputes adjudicated by a special master;

d. Enjoining Mercedes from any further deceptive practices regarding the distribution, sale, and leasing of Affected Vehicles; and

e. Enjoining Mercedes from further manufacturing and selling vehicles with the Battery Defect;

B. Restitution, including at the election of Class Members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

C. Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

D. An order requiring Mercedes to pay both pre- and post-judgment interest on any amounts awarded;

E. An award of costs and attorneys' fees; and

F. Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


DATED: September 30, 2022


By:  *s/ Marybeth Putnick*  
      Marybeth Putnick (NJ Bar No.: 003002007)  
      MPutnick@awkolaw.com  
      Bryan F. Aylstock (*pro hac vice* to be submitted)  
      BAylstock@awkolaw.com  
      E. Samuel Geisler (*pro hac vice* to be submitted)  
      SGeisler@awkolaw.com  
      Caitlyn C. Miller (*pro hac vice* to be submitted)  
      CMiller@awkolaw.com  
      AYLSTOCK, WITKIN, KREIS &  
      OVERHOLTZ, PLLC  
      17 East Main Street, Suite 200  
      Pensacola, FL 32502-5998  
      Telephone: (850) 202-1010  
      Fax: (850) 916-7449  
      ***ATTORNEYS FOR PLAINTIFF***